UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Brooke Higgins

    v.                                    Civil No. 18-cv-1136-LM
                                            Opinion No. 2020 DNH 004
Andrew Saul,[1] Commissioner,
Social Security Administration


**O R D E R**

Brooke Higgins moves to reverse the decision of the Commissioner of the Social Security Administration denying her application for supplemental social security income. She contends that the Administrative Law Judge ("ALJ") erred by improperly considering and weighing the medical opinions in the record. The Commissioner moves to affirm the ALJ's decision. For the reasons discussed below, the court denies the Commissioner's motion to affirm and grants Higgins's motion to reverse.

**STANDARD OF REVIEW**

In reviewing the final decision of the Commissioner in a social security case, the court "is limited to determining

---

[1] On June 17, 2019, Andrew Saul was sworn in as Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), he automatically replaces the nominal defendant, Nancy A. Berryhill, who had been Acting Commissioner of Social Security.

whether the [Administrative Law Judge] deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the Administrative Law Judge's factual findings as long as they are supported by substantial evidence. 42 U.S.C. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (internal citation omitted). The court "must uphold the Commissioner's findings if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support her conclusion." Id. (brackets and ellipses omitted).

In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 416.920(a)(4). The claimant "has the burden of production and proof at the first four steps of the process." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). The first three steps are (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether she has a severe impairment; and (3) determining whether the impairment

meets or equals a listed impairment. 20 C.F.R. § 416.920(a)(4)(i)-(iii).

At the fourth step of the sequential analysis, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is a determination of the most a person can do in a work setting despite her limitations caused by impairments, id. § 416.920(a)(1), and her past relevant work, id. § 416.920(a)(4)(iv). If the claimant can perform her past relevant work, the ALJ will find that the claimant is not disabled. See id. If the claimant cannot perform her past relevant work, the ALJ proceeds to Step Five, in which the ALJ has the burden of showing that jobs exist in the economy which the claimant can do in light of the RFC assessment. See id. § 416.920(a)(4)(v).

## BACKGROUND

A detailed factual background can be found in Higgins's statement of facts (doc. no. 9) and the Commissioner's statement of facts (doc. no. 11). The court provides a brief summary of the case here.

Higgins initially applied for supplemental security income in July 2011; however, the claim was denied in June 2013 after Higgins failed to appear for an administrative hearing.

On September 3, 2015, Higgins filed another application for supplemental security income, alleging a disability onset date of June 21, 2014, when she was 32 years old. She alleged she was disabled due to fibromyalgia, post-traumatic stress disorder ("PTSD"), anxiety, sleep apnea, gastroesophageal reflux disorder, and migraine headaches. After her claim was denied at the initial level in November 2015, she requested a hearing before an ALJ.

The ALJ held an initial hearing on July 6, 2017, and a supplemental hearing on November 21, 2017. The ALJ denied Higgins's claim for benefits in a written decision dated January 10, 2018.

At step two, the ALJ found that Higgins had the following severe impairments: anxiety, a panic disorder, agoraphobia, PTSD, depression, bipolar disorder, marijuana abuse, a back disorder, headaches, and obesity. The ALJ found that Higgins had not presented sufficient evidence to establish that her alleged fibromyalgia was a medically determinable impairment. The ALJ also found that Higgins had medically determinable, but non-severe, chronic fatigue, torticollis, polycystic ovarian syndrome, obstructive sleep apnea, and hypothyroidism.

The ALJ concluded Higgins retained the RFC to:

> perform light work as defined in 20 C.F.R 416.967(b) except she should avoid all ladders, ropes and scaffolds and should avoid all hazards, unprotected

4

> heights, etc.  She is limited to simple 1 to 2 step
> tasks and is able to maintain attention and
> concentration for two-hour increments throughout an
> eight-hour workday and 40-hour work week, in a low
> stress environment (which is defined as limited to
> little or not change in the work setting, and limited
> to little or no need for the use of judgment).  Should
> avoid interaction with the general public and can
> sustain occasional interaction with coworkers and
> supervisors (defined as no more than brief and
> superficial and for no more than about one third of
> the day).

Admin. Rec. at 26.  In assessing Higgins's RFC, the ALJ gave "great weight" to medical opinions from Dr. Landerman, a non-examining state agency psychologist who completed a paper record review, and Dr. Fuess, a non-examining psychologist who reviewed Higgins's case record.  Admin. Rec. 40-41.  The ALJ gave "less than great weight" to a medical opinion from Dr. Bildner, a doctor who conducted a psychological evaluation at the request of Disability Determination Services, and "little weight" to a medical opinion from Dr. Murray, Higgins's primary care physician.  Admin. Rec. 40-41.

At step five, the ALJ relied on a vocational expert's testimony, and concluded that Higgins was capable of performing jobs that exist in the national economy including mail clerk and fruit distributor.  Accordingly, the ALJ found that Higgins was not disabled.

The Appeals Council denied Higgins's request for review in October 2018, making the ALJ's decision the Commissioner's final decision. This action followed.

**DISCUSSION**

Higgins contends that the ALJ erred in considering and weighing the medical opinions about Higgins's mental function limitations. Specifically, Higgins argues that the Commissioner erred by: (1) not considering or evaluating a medical opinion in the record from Dr. Ciri, a doctor who conducted a consultative exam on Higgins in 2012; (2) giving too little weight to Dr. Bildner's opinion; (3) giving great weight to Dr. Landerman's opinion; and (4) giving little weight to Dr. Murray's opinion. The Commissioner argues that, to the extent the ALJ made any errors, reversal is not mandated.

The ALJ is required to consider and evaluate every medical opinion that she receives. See 20 C.F.R. §§ 416.927(b),(c). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

The ALJ analyzes the opinions of state agency consultants, treating sources, and examining sources under the same rubric. See id.; 20 C.F.R. § 416.927(c). The ALJ must consider "the examining relationship, treatment relationship (including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship), supportability of the opinion by evidence in the record, consistency with the medical opinions of other physicians," along with the doctor's expertise in the area and any other relevant factors. Johnson v. Berryhill, No. 16-cv-375-PB, 2017 WL 4564727, at *5 (D.N.H. Oct. 12, 2017).

I. Dr. Ciri

Dr. Ciri conducted a consultative examination on Higgins during the pendency of Higgins's initial application for supplemental security income in January 2012. At that time, Dr. Ciri noted that Higgins was visibly affected by depression and anxiety. Dr. Ciri administered a Wechsler Adult Intelligence test, and Higgins scored in the low average range. Dr. Ciri assigned Higgins a 50 on the "GAF" (Global Assessment of Functioning) scale. Dr. Ciri's opinion states that "[Higgins's] testing performance was impacted by anxiety, and she had significant difficulty, at times, producing answers on demand." Admin. Rec. at 443. Dr. Ciri observed that Higgins expressed

7

difficulties with memory, rendering it "likely that she could have difficulties remembering and carrying out instructions." Id. Dr. Ciri concluded that Higgins's emotional status "would predictably compromise her ability to respond appropriately to supervision, co-workers, and work pressures in a work setting." Id.

The ALJ did not address Dr. Ciri's medical opinion in the written decision. As mentioned, an ALJ is required to evaluate all medical opinions. Ordinarily, "an ALJ's failure to consider a medical opinion in the record at all is legal error that requires remand." Dimambro v US Soc. Sec. Admin., Acting Comm'r, No. 16-CV-486-PB, 2018 WL 301090, *4 (D.N.H. Jan. 5, 2018) (citing Nguyen, 172 F.3d at 35-36).

The Commissioner acknowledges that the ALJ did not address Dr. Ciri's opinion but argues that this error does not mandate reversal because: (1) Dr. Ciri's opinion pre-dates the start of the relevant period; (2) the ALJ had, and considered, five other opinions regarding Higgins's mental limitations; (3) Dr. Ciri's opinion did not include a detailed mental RFC assessment and did not conclude that Higgins was precluded from performing all work; and, (4) it is not clear that the RFC would have been more restrictive if the ALJ had considered Dr. Ciri's report. Thus, the Commissioner contends that any error was harmless. The court is not persuaded by the Commissioner's arguments.

First, an ALJ is not free to disregard a medical opinion because the opinion predates the alleged onset of disability. Although such opinions may be of limited relevance in isolation, evidence that predates the onset of disability may help establish disability when considered and evaluated in combination with later evidence. See Hartford v. Berryhill, No. 17-CV-467-SM, 2018 WL 1385913, at *6 (D.N.H. Mar. 19, 2018), DeBoard v. Comm'r of Soc. Sec., 211 F. App'x 411, 414 (6th Cir. 2006). Accordingly, "ALJs should not ignore medical reports simply because they predate the alleged onset of disability." Beth v. Astrue, 494 F. Supp. 2d 979, 1007 (E.D. Wis. 2007).

Second, the presence of multiple medical opinions on an issue does not obviate the requirement that an ALJ "always consider the medical opinions" in the claimant's case record. 20 C.F.R. § 416.927(b). Although an ALJ does not need to address every individual piece of evidence that is cumulative or unhelpful to the claimant, "an ALJ is not free to simply ignore medical opinions supporting a claimant's position." Dimambro, 2018 WL 301090, *4. Here, Dr. Ciri's opinion was neither cumulative nor unhelpful. On the contrary, her opinion contained objective evidence, including IQ test results and a GAF number, that were not duplicated elsewhere in the record. This objective evidence supported Dr. Ciri's conclusion that Higgins's mental impairments limited her ability to function in

9

a work setting.  Accordingly, this court cannot conclude that the ALJ's failure to consider Dr. Ciri's opinion was rendered harmless by the presence of other medical opinions in the record.

In addition, the ALJ's failure to consider and evaluate Dr. Ciri's opinion may have caused the ALJ to erroneously give lesser weight to other favorable medical opinions.  For example, the ALJ gave "less than great weight" to Dr. Bildner's opinion that Higgins was "unable to sustain prolonged attention and concentration," "unable to manage stress common to a work setting," and "unable to maintain a consistent schedule," because Dr. Bildner's opinion purportedly did not "state what objective evidence [Dr. Bildner] relied upon in making her assessment."  Admin. Rec. 41.  However, Dr. Bildner's opinion explicitly states that she reviewed Dr. Ciri's opinion in rendering her own opinion.  Admin. Rec. 654.  The ALJ also gave "little weight" to Dr. Murray's opinion, Higgins's treating physician, because the "objective evidence does not support extreme or marked limitations."  Admin. Rec. 41.  However, Dr. Ciri's opinion contains objective evidence that supports Dr. Murray's opinion.  Therefore, if the ALJ had considered Dr. Ciri's opinion and the objective evidence contained therein, the ALJ may have afforded greater weight to the other favorable opinions and assessed Higgins as having a more restrictive RFC.

Although the Commissioner argues that reversal is not required, the Commissioner has not provided the court with legal authority that supports this outcome. On the contrary, numerous courts have remanded in similar circumstances. See, e.g., Nguyen, 172 F.3d at 35-36 (remanding when ALJ did not mention favorable medical opinion because "[t]he ALJ was not at liberty to ignore medical evidence"); Kneeland v. Berryhill, 850 F.3d 749, 761 (5th Cir. 2017) (remanding after ALJ failed to mention a medical opinion in the decision); Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (remanding after ALJ failed to mention a medical opinion because an ALJ must "provide some explanation for a rejection of probative evidence which would suggest a contrary disposition"); Perry v. Colvin, 91 F. Supp. 3d 139, 153 (D. Mass. 2015) (remanding because "if the opinions had been properly evaluated by the ALJ, the weight of the evidence could have shifted in Plaintiff's favor").

Therefore, because it is the task of the ALJ, not this court, to resolve conflicts in the evidence and determine whether a claimant is disabled, this court remands the case to the ALJ. See Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

II. Remaining Arguments

Because the court concludes that the ALJ's failure to address Dr. Ciri's medical opinion requires reversal, the court need not address Higgins's additional challenges regarding the weight the ALJ afforded the other medical opinions in the record. Indeed, the ALJ may decide to assign different weights to those opinions after considering and evaluating Dr. Ciri's opinion. See 20 C.F.R. § 416.927(c).

## CONCLUSION

For the foregoing reasons, Higgins's motion to reverse (doc. no. 8) is granted, and the Commissioner's motion to affirm (doc. no. 10) is denied. The clerk of court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

January 7, 2020

cc: Counsel of Record.